## Case No. 9,155.

### MARTIN v. ACKER.

[1 Blatchf. & H. 279.] [1]

District Court, S. D. New York. July 9, 1831.

SEAMEN'S WAGES—HAND ON SLOOP—ACTION IN PERSONAM—ACCOUNT STATED.

1. A hand on board a sloop of over fifty tons burthen plying on the Hudson river, between New-York and Catskill, is a seaman; and an action in personam brought by him against the master and owner of the sloop, to recover his wages, is within the jurisdiction of this court.

2. The respondent in such action is bound by his acquiescence in an account stated.

This was an action in personam, for seaman's wages. The defence was, that the libellant [Levi Martin] was not a seaman but a boatman, that the matter claimed was not within the jurisdiction of the court, and that the demand had been satisfied. The libellant served as a hand, and as captain's clerk, on board a sloop of over fifty tons burthen, belonging to the respondent [Jacob Acker], and assisted in navigating her for two seasons up and down the North river, between New York and Catskill. The respondent was also master of the vessel during the time the libellant's services were rendered.

Edwin Burr and Erastus C. Benedict, for libellant.

Charles W. Sandford, for respondent.

BETTS, District Judge. The laws of the United States assume the regulation of all

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

vessels of the description of the one on which the libellant served. They must be enrolled or licensed, and the men must pay hospital money the same as if on board sea-going vessels,—Act Feb. 18, 1793 (1 Stat. 305); Act July 16, 1798 (1 Stat. 695),—and, since the decision in Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1, there can be no longer a doubt that the navigation from port to port in a particular state, is equally subject to the authority of the general government with that from state to state. Those employed in conducting that navigation are properly denominated seamen. The statute which makes provision for the recovery of seamen's wages, supplies no remedy in their case, it being limited to vessels "bound from a port of the United States to any foreign port," and to vessels "of the burthen of fifty tons or upwards, bound from a port in one state to a port in any other than an adjoining state." Act July 20, 1790 (1 Stat. 131). But that statute is never construed as interfering with the privileges of seamen under the law maritime, further than to determine the manner in which suits shall be commenced. It has, accordingly, been decided in several of the courts of the United States, after full consideration, that the remedies of the maritime law apply to all cases of admiralty and maritime jurisdiction on the rivers of the United States which are navigable to the sea for boats of ten tons burthen and upwards. Serg. Const. Law (2d Ed.) 195, 196. In the case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, the doctrines before recognised as having relation to all navigable waters, were restrained to waters within the ebb and flow of the tide. It is difficult to discern any principle upon which that limitation can be applied to one description of navigable waters in the United States more than to another. Contracts with seamen, performed or contemplated to be performed on the high seas, or within the ebb and flow of the tide, come under the admiralty jurisdiction, within the most rigorous construction of its extent; and the jurisdiction is not lost, though the voyage is to commence or end beyond the reach of the tide. The whole of the services claimed for in this case having been rendered upon tide waters, the subject matter of the suit falls within the cognizance of this court.

The libellant's account for his services was submitted to the respondent, each item of charge and credit was distinctly stated to him, and he made no objection to its correctness, but agreed to settle it, as stated, in a few days. One witness swears that he offered to give his note for the balance, payable in a few days. Another says, that he understood the respondent to say that a payment of $15 84 ought to be credited, and that he and the libellant would settle the residue between themselves in a few days. The respondent now claims, in addition to the credits stated upon the account, payment for boarding the libellant during the winter, on the vessel, at the rate of $2 or $3 per week. The

respondent's witness who proves the boarding states, also, that he considered the libellant as being in the respondent's employment during the time. As the board was not claimed when the account was stated and the balance acquiesced in, the inference to be drawn from all the evidence is, that the respondent considered the board as satisfied by other services of the libellant, or by payment, and that it is now set up by the respondent out of resentment at the institution of a suit for the wages. This charge is disallowed.

The libellant collected two bills for wood sold, after he left the respondent's employ. These sums are to be credited on his account. On a report by the clerk of the amount due, a decree may be entered for the balance, with costs.