## THE JAMES H. SHRIGLEY.

## LAWSON v. THE JAMES H. SHRIGLEY.

*(District Court, N. D. New York. April 22, 1892.)*

SEAMAN'S WAGES—FEMALE COOK—WIFE OF FIRST COOK.
 On the evidence, *held*, that the libelant, who was the wife of the cook on a steam
 barge, had been engaged by the master of the barge as second cook, and was en-
 titled in this suit *in rem* to recover wages for her term of service.

In Admiralty.    Suit to recover wages.
*Cook & Fitzgerald*, for libelant.
*Clinton, Clark & Ingraham*, for respondents.

COXE, District Judge.    Louisa A. Lawson brings this libel against the
steam barge James H. Shrigley to recover wages as second cook, at the
rate of $15 per month from May 3, 1891, to August 18, 1891, in all $54,
under an agreement made with the master of the barge.    That the libel-
ant performed the duties of second cook faithfully and well and that her
services were reasonably worth the sum demanded is not disputed.    The
defense is that no agreement was made with the libelant, but that an
agreement was made with her husband by which he agreed to do the
cooking for the barge, with his wife as assistant, for the sum of $60 a
month.    The only question of fact is whether the contract was made as
alleged in the libel.    The libelant and her husband both swear in un-
qualified terms that the master agreed to pay her $15 per month.    This
agreement is denied by the master.    Three witnesses were called for the
respondents who testified to declarations of the libelant and her husband
inconsistent with their present testimony.    The shipping articles of the
barge were introduced in which, after the name of the libelant's husband,
appear the words "cook and wife" and on the three pay rolls signed by
her husband appear, not in his handwriting, however, the words "L.
Lawson and wife, cooks."    The libelant did not draw her wages when
her husband drew his and nothing was said on the subject by either of
them until they were about to leave the barge.    These facts, certainly,
tend to corroborate the testimony of the master that the contract was as
stated by him.    In an ordinary action between man and man the pre-
sumptions arising from facts like these would be persuasive and, per-
haps, controlling, but in a case of mariners' wages, and that, too, where
the libelant is a woman, a somewhat different rule obtains.    It should
be remembered that there are few claims so highly favored and studi-
ously protected as the claims of mariners for their wages.    They are re-
garded as the wards of the court and every shield and safeguard which
the law can give is thrown around them, both by legislative enactment
and judicial decision.    Their usefulness and importance on the one hand
and their proverbial improvidence and recklessness on the other have
made them the objects of solicitude in all commercial nations.    They

are recognized as a thoughtless, imprudent, rash and impulsive class, ignorant of their rights and easily imposed upon by sharp and designing men. Admiralty courts which do not follow the harsh and unyielding rules of the common law, but sit rather as courts of equity, are vigilant to protect them and hold as void and as of no effect all contracts and stipulations made by them which are in derogation or relinquishment of any of their general rights and privileges. It is the aim of the law to shield them from oppression and take care of their rights and interests by protecting them, not only against the master, but also against themselves. In the light of these well-known rules it is thought that the libelant is entitled to recover, and for the following reasons:

1. The preponderance of direct testimony is with her on the main issue. The three witnesses to the principal transaction were all interested, but the libelant and her husband agree as to the terms of the contract. They are contradicted by the master alone.

2. The contract as testified to by the libelant was an equitable and natural one. The shipping articles show that on former trips the cook on this barge received as high as $75 per month and never less than $60, and that the second cook, on one trip, received $25 per month. It is conceded by the respondents that the sum of $60 a month for both first and second cook was low wages. As this was the lowest sum theretofore paid to the cook alone it is hardly probable that the libelant's services were to be counted as nothing, especially when it is conceded that she was a competent cook and discharged her duties faithfully.

3. The character of two of the witnesses called to contradict the libelant and her husband does not commend them to the favor of the court. Their testimony was evidently dictated by a hostile animus.

4. The libelant was, in legal sense, a mariner. She was part of the crew. It was the duty of the master to have the agreement, even if it were as stated by him, reduced to writing and signed by her. Rev. St. §§ 4520, 4521. If he had obtained a contract as advantageous as the one he says was made, a contract clearly understood by all parties, is it not probable that he would have had it so signed? His failure to do so, if it has no other effect, at least, tends to strengthen the position of the libelant that the contract was as stated by her.

It is thought that the action can be maintained by the libelant in its present form and that she is entitled to a decree for the sum demanded in the libel with costs.