**WALLISER et al. v. BASSETT, Deputy Com'r, etc.**

Civ. A. No. 168.

District Court, E. D. Wisconsin.

Dec. 26, 1939.

On Motion for Trial De Novo Feb. 14, 1940.

On Final Decision March 26, 1940.

McKinney, Folonie & Grier, of Chicago, Ill., for plaintiff.

B. J. Husting, U. S. Dist. Atty., of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This is a proceeding under Section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 United States Code Annotated, Section 901 et seq., to set aside and enjoin the enforcement of an award of compensation made by the respondent, as deputy commissioner of the United States Employees' Compensation Commission. It appears that the libelants, Blair Walliser and Ken Griffin, were the owners of a sailing yacht "Revenge," and that on July 2, 1938, while the yacht was engaged in a race between Chicago and Milwaukee and was about seven miles off the coast of Wisconsin, opposite the City of Racine, Erik Jonasson fell overboard and was drowned. The evidence heard by the Deputy Commissioner is contained in "Exhibit E" to the libel, and shows that deceased had formerly been in the employ of the shipowners and worked on the boat while it was laid up in winter storage; and that, thereafter, he obtained other employment, but continued to work at odd times for Walliser and Griffin; that Jonasson desired to go along on the race in question and libelants were willing that he should do so; that deceased felt that he could not afford to lose the time from his regular employ-

ment and libelant Griffin agreed to give him $10 so that he would not sustain any loss because of time away from his employment. During the race there were six other men on board, besides the owners, and all volunteer members of the crew. Jonasson's duties were chiefly to do the necessary cooking for the other members on board during the race and to do any repair or maintenance work necessary. While the libelant Walliser was handling the tiller, he called for assistance in trimming the sail, without naming any person in particular. The deceased was below deck and, having heard the call, came up on deck to render assistance and, in going toward the stern, fell overboard and was drowned. Within a few days prior to the expiration of a year from the date of death, claim for compensation under the act was filed in behalf of the widow and two minor children. On August 25, 1939, respondent made and filed an award of compensation upon the theory that deceased was in the employ of the shipowners. The award provides for payments to the widow and children in the amount of $14.49 per week; and the commissioner found that the amount accrued from the date of death was $854.91.

This action was started on September 20, 1939, within 30 days after the filing of the award. Section 2 of the Longshoremen's and Harbor Workers' Compensation Act provides: "(3) The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

Section 3 (a) of said act provides:

" * * * No compensation shall be payable in respect of the disability or death of

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; * * *."

The Deputy Commissioner did not make any finding in the award that the decedent was not a member of the crew of the vessel, but found that the deceased "had no duties pertaining to the navigation of the sailboat 'Revenge', his work on this trip consisting of keeping his employers and their friends who accompanied them on the trip supplied with coffee and sandwiches and to keep the boat cleaned up and to do

any necessary maintenance work which might arise."

However, the undisputed evidence would seem to indicate that the deceased was a member of the crew, in accordance with the definition of the term in various cases. See Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190, 192; The Marie, D.C., 49 F. 286; In re Meyer, D.C., 74 F. 881; The Herdis, D.C., 22 F.2d 304; The Mary Elizabeth, C.C., 24 F. 397; and The J. S. Warden, D.C., 175 F. 314.

It therefore appears that when this case is decided upon the merits, it is quite likely that the plaintiffs will prevail. The difficulty in this case on the pending motion is that the act itself lays down strict regulations and conditions under which interlocutory injunctions may be issued. Section 21 (b) of the act provides: "If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred. * * * The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless upon application for an interlocutory injunction the court, on hearing, after not less than three days' notice to the parties in interest and the deputy commissioner, allows the stay of such payments, in whole or in part, where irreparable damage would otherwise ensue to the employer. The order of the court allowing any such stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that such irreparable damage would result to the employer, and specifying the nature of the damage."

In order to show irreparable damage the libelants set forth that the widow and the two children of Erik Jonasson are financially irresponsible and that if the award is set aside, they would not be able to recover back payments which have been made pursuant to the award of the Deputy Commissioner.

As a general rule the fact that the applicants were financially irresponsible would not be sufficient showing of "irreparable damage." In the case of Luckenbach S. S. Co. v. Norton et al., D.C., 21 F.

Supp. 707, 709, the court said: "The plaintiff urges, however, that, even though its injury may be so liquidated and repayment by the claimant directed, it will nonetheless be irreparably damaged because its judgment will be uncollectible. It has been held, however, that if an injury may be adequately compensated in damages, the circumstance, that the party who will be liable to pay them may be unable to do so, does not of itself make the injury irreparable so as to authorize the issuance of an injunction. Atkinson v. Philadelphia & T. R. Co., Fed.Cas. No. 615; Strang v. Richmond, P. & C. R. Co., C. C., 93 F. 71; Heilman v. Union Canal Co., 37 Pa. 100; Continental Casualty Co. v. Lawson, D.C., 2 F.Supp. 459; Robins Dry Dock & Repair Co. v. Locke, 1933 A.M.C. 467. The two cases last cited were decided under the Longshoremen's and Harbor Workers' Compensation Act and, therefore, directly support the conclusion to which we have come."

However, the same case also holds (21 F.Supp. at page 708) that such a proceeding invokes the equity jurisdiction of the court and is subject to the usual rules under which injunctive relief is granted. The libelants in this case have been paying the weekly installments and have agreed in open court that they would be willing to continue such payments pending a decision upon the merits. It likewise appears that this case can be heard upon the merits within approximately 30 days.

The reason for the award of the lump sum payment in the amount of $854.91 is that the applicants did not promptly apply for compensation, but waited until several days before the expiration of the year's time. During this period the libelants had no way of bringing the matter on for hearing. Had the application been filed promptly, a contest could have been made as to the validity of the award, and a relatively small sum in weekly payments would have been all that was involved. There is in this case, therefore, something more than the mere fact that the applicants are in such financial condition that it is likely no recovery of payments could be had. Under all the circumstances it would not appear fair and equitable to require the payment of the lump sum award which accumulated as a result of the applicants' own delay. The decision in Jones v. Shepherd, Deputy Commissioner, D.C., 20 F. Supp. 345, is in point. The court there

said (20 F.Supp. at page 346): "Under the testimony in this case, which is without dispute, it appears that the deceased was a member of the crew of the vessel and is not covered by the act, and to require the complainant to pay the award would cause irreparable injury. It is well settled that the finding of fact by the Deputy Commissioner, if supported by substantial evidence, is binding upon the District Court. In the present case there is no dispute in the testimony, and while the finding of fact by the Deputy Commissioner was to the effect that the deceased was covered by the act and was not a member of the crew, yet it is based upon inferences from the testimony that are not justified."

■ The court in that case, while recognizing the general rule that the lack of financial responsibility in itself is not sufficient to come within the term of "irreparable damage," yet under all the circumstances in that case, permitted an interlocutory injunction to issue.

In the present case, in view of all the circumstances and considering the fact that a hearing on the merits can be held promptly, and in view of the provision of the act providing for a "stay of such payments in whole or in part," an interlocutory injunction may be entered in this case, restraining the payment of that part of the award which provides for the lump sum payment of $854.91, and providing further for the continuance of the weekly payments until the final determination on the merits.

On Motion for Trial De Novo and to Set Early Date for Such Trial.

This is a motion by the libelants asking for a trial de novo and to set an early date for such trial.

■ The Supreme Court in the case of Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, has held that the occurrence of the injury upon the navigable waters of the United States, and the relation of master and servant are fundamental jurisdictional requirements. To determine either of these questions, a trial de novo is proper. Section 3 of the Longshoremen's Act, 33 U.S.C.A. § 903, specifically provides that a member of a crew does not come within the operation of the Act. It would appear that the question of whether an applicant was a member of the crew would also be a jurisdictional matter.

. In the instant case, both the question of master and servant and the question of whether applicant was a member of the crew are at issue, and therefore a trial de novo should be had.

## On Final Decision.

This is a proceeding under Section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., to set aside and enjoin the enforcement of an award of compensation made by the respondent, as deputy commissioner of the United States Employees' Compensation Commission.

On December 26, 1939, this court issued an interlocutory injunction. In the opinion upon the motion for such interlocutory injunction this court stated: "However, the undisputed evidence would seem to indicate that the deceased was a member of the crew, in accordance with the definition of the term in various cases." (Citing decisions.)

Thereafter libelants made a motion for a trial de novo; and this court, on February 14, 1940, held that a trial de novo was proper both on the question of master and servant and on the question as to whether the deceased was a member of the crew.

When this case came on for trial the court's attention was directed to a recent decision by the Supreme Court of the United States: South Chicago Coal & Dock Company et al. v. Harry W. Bassett, 60 S. Ct. 544, 84 L.Ed. ——, decided February 26, 1940.

A stipulation was entered into to the effect that if the court granted a trial de novo, the testimony and the witnesses, as contained in Exhibit E attached to the libel, and which was the testimony taken before the deputy commissioner, be received in evidence with like effect as if the witnesses were produced and examined, and had testified in open court. Respondent, however, reserved his contention that the court was without jurisdiction to grant a trial de novo.

The questions now up for decision are:

1. Whether Erik Jonasson, the deceased, for the purpose of the race during which he met his death, was in the employ of the owners of the sailing yacht "Revenge."

2. Whether said deceased Erik Jonasson was a member of the crew of the sailing yacht "Revenge."

3. If the deceased was in the employ of the shipowners and not a member of the crew, whether his death arose out of and in the course of his employment.

4. Whether the libelants are entitled to a trial de novo of any or all of the foregoing questions.

It appears that the libelants, Blair Walliser and Ken Griffin, were the owners of a sailing yacht "Revenge" and that on July 2, 1938, while the yacht was engaged in a race between Chicago and Milwaukee, and was about seven miles off the coast of Wisconsin, opposite the city of Racine, Erik Jonasson fell overboard and was drowned. The deceased had formerly been in the employ of the shipowners, and had worked on the boat while it was laid up in winter storage; thereafter he obtained other steady employment, but continued to work on the boat at odd times, such as evenings and week ends.

Jonasson desired to go along on the race in question and libelants were willing that he should do so. Deceased had not theretofore sailed upon said yacht. He felt that he could not afford to lose the time from his regular employment, and libelant Griffin agreed to and did give him $10 so that he would not sustain any financial loss because of time away from his employment. During the race there were six other men on board besides the owners and deceased, and all were volunteer members of the crew. Jonasson's duties chiefly were to do the necessary cooking for the other members on board during the race and to do any repair or maintenance work necessary. His duties were mostly below deck. However, some sailing equipment, such as snatch blocks, was kept below deck and the deceased took care of such equipment and handed up to the members of the crew such pieces of equipment as they required from time to time. The race commenced about 7 p.m. on July 1, 1938, and it was contemplated that the race would take substantially two full days. It was necessary that the men on board be supplied with food, and the race could not be sailed without some person on board doing the necessary cooking.

On July 2 the sea was rough and the libelant Walliser was at the tiller. He called for someone, without naming anyone in particular, to give him assistance in the handling of the mainsail. In response to such call, deceased came up from below

deck and started aft, and in doing so fell overboard. No one actually saw him at the moment he fell.

Within a few days prior to the expiration of a year from the date of death, claim 'for compensation under the Act was filed in behalf of the widow and two minor children. On August 25, 1939, respondent made and filed an award of compensation upon the theory that the deceased was in the employ of the shipowners. No finding was made by the respondent that the deceased was not a member of the crew. The deputy commissioner, however, did make a finding that the deceased "had no duties pertaining to the navigation of the sailboat 'Revenge', his work on this trip consisting of keeping his employers and their friends who accompanied them on the trip supplied with coffee and sandwiches, and to keep the boat cleaned up, and to do any necessary maintenance work which might arise."

Section 2 of the Longshoremen's and Harbor Workers' Compensation Act provides: "(3) The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

Section 3 (a) of said Act provides:

"* * * No compensation shall be payable in respect of the disability or death of—"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; * * *."

It is undisputed that the sailing yacht "Revenge" was a small vessel under eighteen tons net, to wit: seventeen tons net; fifty-eight feet, ten inches long over all; and about thirty-six feet at the water line.

▮ Considering the fourth question first, the respondent was clearly entitled to a trial de novo upon the jurisdictional question of whether the relationship of master and servant existed. Crowell v. Benson, 285 U.S. 22, 64, 52 S.Ct. 285, 76 L.Ed. 598. The fact that Jonasson was employed regularly by the libelants during the winter months while the yacht was in storage is not at all controlling. About April 1 he obtained steady employment from another employer, and such work had nothing whatever to do with the yacht "Revenge." However, at odd times, such as evenings and week ends, he did continue to work about the boat, such as painting and refitting.

There is no real dispute as to what the facts are, but merely a difference of opinion as to the conclusions to be drawn therefrom. Jonasson was a worker. He could not afford to lose any time from his work, because he needed the wages he would earn. He had never sailed upon the boat and had often expressed a desire so to do. When plans were being made for the two day race from Chicago to Milwaukee and return, Jonasson was anxious to make the trip and the owners of the boat were very agreeable that he should do so. While the deceased was not a professional cook, yet he could cook well and on a two day trip it was very evident that someone on board the ship would be required to do some cooking. Therefore, Griffin, one of the owners, arranged to and did pay Jonasson the sum of $10.

▮▮ The Longshoremen's and Harbor Workers' Compensation Act is to be liberally construed. Kobilkin v. Pillsbury, 9 Cir., 103 F.2d 667. From the presumptions contained in the Act, it is very evident that Congress intended a liberal construction. We have, therefore, reached the conclusion that, under the circumstances and facts hereinbefore set out, the relationship of master and servant did exist at the time when Jonasson met his death. As to whether Jonasson was an employee under the terms of the Act, we must consider whether he was a member of the crew. Section 2 (3) of the Act.

▮ The order heretofore entered granting a trial de novo on the question of whether Jonasson was a member of the crew must be vacated in view of the decision in the South Chicago Coal & Dock Company case, supra. Our inquiry must be confined to a determination whether there was any evidence before the deputy commissioner which justified the finding he did make, which by implication we must assume was that Jonasson was not a member of the crew.

▮ The entire record before the commissioner has been carefully read and examined. Unfortunately the deputy commissioner assumed a somewhat hostile, blustering and sarcastic attitude in his examination of the witnesses Walliser and Griffin, and insisted that these witnesses had made statements which the record shows were not made by them. The deputy

commissioner apparently resented any objections made by libelants' counsel, and insisted that objections should be made at the end of the examination, after he had finished his questioning. Although the widow was represented by counsel, the deputy commissioner energetically assumed the role of prosecutor, and it has therefore been necessary to read carefully all of the testimony before him. Brief excerpts cannot be considered, unrelated to the balance of the testimony. The brief in support of the deputy commissioner's award cites a statement by Walliser from p. 7 of the transcript, to the effect that Jonasson was not a member of the crew, and yet the same witness testified, on p. 17: "Q. But you stated he was not a member of the crew. A. I did not say that. No sir."

Walliser endeavored to have the commissioner define what he meant by "member of the crew." The witness then said, p. 18: "Well, I mean in any race a man on board in one sense is a member of the crew and in another sense you might restrict it to a man actually handling the boat."

At another point, p. 22: "Q. He helped sail the boat, didn't he? A. Well, if we call that helping to sail a boat, I guess he did. I believe he handed up equipment."

On the same page, the deputy commissioner asked: "Q. Did you say he was a member of the crew? A. Well, for the purpose of the race he was, Yes."

It is undisputed in this case that some sailing equipment, such as snatch blocks, was kept below deck, and that the deceased took care of such equipment and handed up to other members of the crew any pieces of equipment kept below deck as they were required from time to time. There is no question but that he was attempting to assist in handling the mainsail at the time he met his death. There is plenty of evidence to sustain the finding of the commissioner that Jonasson had duties consisting of keeping his employers and their friends supplied with coffee and sandwiches and to keep the boat cleaned up and to do any necessary maintenance work which might arise. The evidence also shows, however, that he had further duties as hereinbefore set forth. While it was the practice to assign each person on board to some particular station, yet anyone might be called upon to do anything at any time which might be necessary in connection with the sailing of the boat. The Supreme Court had some difficulty in determining just what was included in the use of the word "crew." In the South Chicago Coal & Dock Company case, the court said [60 S.Ct. 549]: "We find little aid in considering the use of the term 'crew' in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen * * *, were still regarded as distinct from members of a 'crew'. They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation." (Citing cases.)

In the same case, the court said further: "The question concerns his actual duties. These duties, as the Court of Appeals said, did not pertain to navigation, aside from the incidental task of throwing the ship's rope or making the boat fast, a service of the sort which could readily be performed or aided by a harbor worker. What the court considered as supporting the finding of the deputy commissioner was that the primary duty of the decedent was to facilitate the flow of coal to the vessel being fueled, that he had no duties while the boat was in motion, that he slept at home and boarded off ship and was called each day as he was wanted, and was paid an hourly wage."

In the instant case, of course, Jonasson's duties were to be performed while the boat was in motion. During the race he slept on board the ship, just as did other members of the crew. It would require a considerable extension of the rule in the South Chicago Coal & Dock Company case to apply it to the facts in the case at bar. There is nothing inconsistent with the finding made by the deputy commissioner and the conclusion that Jonasson was a member of the crew. Congress, in enacting the Longshoremen's and Harbor Workers' Compensation Act, did not define the term "member of a crew of any vessel." We must, therefore, assume that the term was used in its ordinary sense, in spite of the statement made in the South Chicago Coal & Dock Company case. Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190, 192; The Marie, D.C., 49 F. 286; In re Meyer, D.C., 74 F. 881; The Mary Elizabeth, C.C., 24 F. 397; The J. S. Warden,

D.C., 175 F. 314; and United States v. Winn, 28 Fed.Cas. 733, No. 16,740.

■ Libelants raised the question of constitutionality of the Act. This question was settled in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, and no further consideration need be given to that contention.

We conclude that Jonasson was a member of the crew of the yacht "Revenge" at the time of his death, and that there was no evidence to the contrary before the deputy commissioner. Therefore he was not under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

In view of the above conclusion, it is not necessary to consider the third question as to whether his death arose out of and in the course of his employment. Appropriate findings of fact and conclusions of law will be entered, as well as a final decree perpetually enjoining the enforcement of the award of compensation in question.