**A. L. MECHLING BARGE LINE et al. v. BASSETT et al.**

No. 7540.

Circuit Court of Appeals, Seventh Circuit.

May 16, 1941.

KERNER, Circuit Judge, dissenting.

Thos. C. Angerstein, Geo. W. Angerstein, and Charles Wolff, all of Chicago, Ill., for appellants.

J. Albert Woll, U. S. Atty., and Edward J. Ryan, Asst. U. S. Atty., both of Chicago, Ill., and Robert N. Wallace, of Joliet, Ill., for appellees.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order, entered August 23, 1940, dismissing plaintiffs' complaint, predicated upon Sec. 21(b) of the Longshoremen's and Harbor Workers' Compensation Act, (hereinafter called the "Act"). Title 33, U.S.C.A., Chap. 18, Sec. 901 et seq., made applicable to the Dist. of Columbia, 45 Stat. 600, D.C.Code 1929, T. 19, §§ 11, 12, 33 U.S.C.A. § 901 note. The complaint sought to review and set aside an award by a Deputy Commissioner of the United States Employees' Compen-

sation Commission, in favor of Grace V. Lockas and minor children for benefits provided by the Act, on account of the accidental death of Herman James Lockas.

The complaint, so far as material to the issues presented on this appeal, alleged:

"(a) The record shows that the deceased, Herman James Lockas, was employed as a cook and was a member of the crew of the employer's towboat 'Gladys M.'

"(b) The record shows that the deceased, Herman James Lockas, was not performing any duties of his employment at the time he fell and was drowned."

Paragraph (a) was predicated upon Sec. 3(a), 33 U.S.C.A., ¶ 903, which provides:

"* * * No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel * * *."

Paragraph (b) was predicated upon Sec. 2(2) of the Act, which provides: "The term 'injury' means accidental injury or death arising out and in the course of employment *. * *."

There was attached to the complaint as exhibits, a copy of the application for compensation, plaintiffs' answer thereto, a transcript of the evidence taken and heard before the Deputy Commissioner, and the Deputy Commissioner's order awarding compensation, including "findings of fact." The material portion of said findings is as follows: "* * * That on said day the deceased employee herein while performing service for the employer upon the navigable waters of the United States, sustained personal injury resulting in his death, while employed as a cook and general handyman on board the towboat 'Gladys M'; that on the evening of said date, the vessel 'Gladys M' was afloat upon the navigable waters of the United States at Joliet, Illinois, and the deceased employee fell overboard and was drowned, which accident arose out of and in the course of the employment of the deceased employee herein, etc. * * *"

It is to be noted there was no direct finding that the deceased was not a "member of a crew." There is not a scintilla of evidence to support "and general handyman" as found. It is conceded that he was employed and acted solely in the capacity of a cook.

There was filed on behalf of the Deputy Commissioner, and also on behalf of the widow and minor children, separate motions, identical in substance, to dismiss the complaint. As to the allegation of the complaint that the deceased was a member of the crew, it was alleged:

"* * * Yet it appears from the Compensation Order attached to said Complaint as 'Exhibit D,' and incorporated therein, that the defendant Harry W. Bassett, Deputy Commissioner, found that the said Herman James Lockas was a cook and handy-man, and therefore not a member of the crew of the boat Gladys M, but an employee of the plaintiff, * * *" and that such finding was supported by substantial evidence presented at the hearing before the Deputy Commissioner. As to the allegation of the complaint that the deceased, at the time of his death, was not performing any duties of his employment, it was alleged that the Deputy Commissioner, found: "* * * that the deceased Herman J. Lockas met his death while 'performing service' for his employer, and therefore that he met his death in the course of his employment * * *" within the meaning of the Act. As stated, the appeal is from the order of dismissal.

■ The record presents a rather awkward situation. As shown, the Deputy Commissioner made no finding as to whether the deceased was a member of the crew. The complaint contained the positive averment that he was a member. The statement in the motion to dismiss, "and therefore not a member of the crew" is clearly a conclusion of the pleader. The court, in a memorandum opinion, stated: "I am of the opinion that the evidence sustains the findings of the Commissioner that James Lockas was not a member of the crew * * *"

Thus the court, on a motion to dismiss, sustained a finding of the Commissioner, which the Commissioner did not make. The order appealed from recites that "the aforesaid complaint fails to state a cause of action." It appears to us that the complaint stated a cause of action and that the defendants should have been required to answer. Apparently, however, the court treated the motion to dismiss in the nature of answers, and decided the case on its merits. In this view of the matter, it is difficult to see how either party would benefit by a reversal which would require the

lower court to decide questions which, as pointed out, it apparently has decided.

We therefore will consider the case on its merits. In doing so, we shall assume the Commissioner found that the deceased was not a member of the crew, and that such finding was sustained by the District Court. As indicated, there are two questions in dispute—(1) Was the deceased a member of the crew, and (2) Did the accidental injury causing his death arise out of and in the course of his employment? It requires no citation of authority in support of the proposition that the findings of the Deputy Commissioner are conclusive if substantially supported. The testimony heard by the Deputy Commissioner is not in dispute. Does it afford substantial support for the ultimate findings or conclusions about which the controversy revolves?

The A. L. Mechling Barge Line owned and, through its employees, operated a towboat known as the "Gladys M" which was used in general towing trade up and down the Illinois waterway, principally between Havana and Chicago, Illinois. The boat was stationed in no particular place, but was continuously in operation. The crew consisted of seven members (if the deceased be included)—the Master, the pilot, two engineers, two deck hands, and the deceased. Just prior to January 1, 1940, the deceased was employed by the captain of the boat as a cook at a salary of $100 per month. He continued in such employment until March 22, 1940, the date of his death. His sole duty was to prepare and serve meals to the crew. In connection therewith, he was required to obtain necessary provisions at points where the boat docked. He slept on the boat and, aside from the four days a month off duty, to which all members of the crew were entitled, he remained continuously on the boat. He was considered by the pilot as a member of the boat's crew and was so recognized by the Federal Social Security Administration.

The only testimony concerning the circumstances of his death was that furnished by his eleven year old son who, for the first time, was accompanying his father on the boat. The son stated that after his father had completed washing the dishes in the kitchen, they were together on the deck on the way to the pilot house where his father was going to show him the search lights. In some manner, not ex-

plained, the deceased fell into the water and was not again seen alive. His body was not recovered until some three weeks later.

Plaintiffs furnish us with an interesting legislative history of the Act for the purpose of throwing light upon the intention of Congress in its use of the words "member of a crew," which we do not deem necessary to review. A number of cases are cited where a cook and other similar employees have been held to be, under legislation prior to that in the instant case, members of a crew. Saylor v. Taylor, 4 Cir., 77 F. 476; Martin v. Acker, 16 Fed. Cas. page 884, No. 9,155; The Buena Ventura, D.C., 243 F. 797, 799; The Sea Lark, D.C., 14 F.2d 201; The James H. Shrigley, D.C., 50 F. 287; Wolverton v. Lacey, 30 Fed.Cas. page 417, No. 17,932; Lauzon's Case, 302 Mass. 294, 19 N.E.2d 51; Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670. No case is called to our attention, either prior or subsequent to the present enactment where a cook has been held otherwise.

In Dunham Towing & Wrecking Co. v. Bassett, D.C., 36 F.Supp. 527, the court held that an employee on a boat whose principal duties were that of a fireman to take care of the steam which furnished the power for the navigation of the boat, by keeping the furnace under the boiler properly fired, was a member of the crew under the Act.

In Walliser v. Bassett, D.C., 33 F.Supp. 636, it was held that an employee engaged upon a sailing yacht whose duties were chiefly to do the necessary cooking for the other members of the crew, and to do any repair or maintenance work necessary, was a member of the crew.

In Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190, it was held that a deckhand who was not an articled seaman or an experienced sailor, who was fed and quartered on a dredge, was a member of the ship's company and a member of the crew. The court, in discussing the question as to who constituted the crew, on page 192 of 94 F.2d, said: " * * * There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages. If she has a master, there is subjection to his commands. The nature of the work done is not determinative. Engineers and

cooks as well as sailors are included. * * *"

Defendants rely almost entirely upon South Chicago Coal & Dock Company v. Bassett, 7 Cir., 104 F.2d 522, a decision of this court, affirmed by the Supreme Court in 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732. It would serve no useful purpose to undertake an analysis or discussion of these opinions. Whatever was said must be considered in connection with the facts of the case. The Supreme Court, 309 U.S. on page 260, 60 S.Ct. 544, 84 L. Ed. 732, succinctly appraises the facts which this court considered as sufficient to sustain the finding of the Deputy Commissioner that the employee in question was not a member of the crew. The Supreme Court said, page 260 of 309 U.S., page 549 of 60 S.Ct., 84 L.Ed. 732: "* * * What the court considered as supporting the finding of the deputy commissioner was that the primary duty of the decedent was to facilitate the flow of coal to the vessel being fueled, that he had no duties while the boat was in motion, that he slept at home and boarded off ship and was called each day as he was wanted, and was paid an hourly wage. Workers of that sort on harbor craft may appropriately be regarded as 'in the position of longshoremen or other casual workers on the water'. * * *"

In contrast, we have a situation in the instant case where the deceased's sole duties were performed upon a boat actively and continuously engaged in navigation, where he slept and boarded, where he remained at all times except the four days each month when he and other members of the crew were off duty, and for which service he was paid a monthly wage.

Defendants place much stress upon the statement of this court in the South Chicago Coal & Dock Company case, 104 F.2d at page 528:

"* * * The Longshoremen's Act contemplated the exclusion of that body of men who in the common parlance make up the ship's complement,—those who regularly or ordinarily are engaged in seafaring and navigation, not those whose tasks are of such a nature that they are independent of navigation in their scope, such as tasks which might as well have their background on shore, or at the dock * * *."

It is argued that the duties of the deceased were "independent of navigation in their scope and might well have had their background on the shore." In fact, the crux of defendants' argument is predicated upon this proposition. We are of the view that this position is untenable, and that a cook employed under the circumstances presented, was acting in aid and support of navigation and not independent therefrom. In fact, such services were perhaps as essential to the successful and continuing operation of the boat as were the services of any other member of the crew. Nor are we impressed with defendants' effort to distinguish between a cook, as disclosed in the instant case, and a "traditional sea cook." Such a distinction has no logical basis. In one case, as in the other, a cook who serves continuously on a boat in operation, be it large or small, whether in the river or on a larger body of water, is an essential, if not indispensable, part of the ship's complement, necessary to the carrying on of the navigation in which the boat is engaged.

A reading of the cases makes it rather plain, that while numerous facts have been taken into consideration in distinguishing between a longshoreman and a member of the crew, the fundamental distinction, generally recognized, has been whether the employee was permanently attached to a ship engaged in navigation.

In Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245, relied upon by the defendants, it was pointed out that the employee was paid on an hourly, rather than a monthly, basis, and that he neither ate nor slept on board the ship. He was not a member of the crew.

In C. Flanagan & Sons v. Carken, Tex. Civ.App., 11 S.W.2d 392, on page 394, a case often cited, the court, in describing a longshoreman as distinguished from a member of the crew said: "* * * He does not undergo the hardships and dangers, nor does he surrender the personal rights and liberties that a seaman does in binding himself to the vessel as a member of its crew in exchange for the right of maintenance, care, and wages flowing to the seaman by virtue of his contract to serve the ship."

In Henderson v. Jones, 5 Cir., 110 F.2d 952, the decedent was a deckhand during the time when the boat was in operation, but when the ship was tied up he worked only at an hourly wage and ate and slept at home. The accident happened at a

time when the ship was tied up, and it was held that the evidence was sufficient to support the finding that the decedent was not a member of the crew. We cite in the footnote [1] other cases where this same fundamental distinction has been given recognition.

We are of the opinion there is nothing in South Chicago Coal & Dock Co. v. Bassett, supra, which alters this distinction so often applied—in fact, as already pointed out, that case recognizes and applies it. In our judgment the conclusion is inescapable that the deceased was a member of the crew within the meaning of the Act, and that the finding to the contrary was not in accordance with law. It follows that the award made by the acting Commissioner can not be enforced. There is no occasion to discuss or decide the question as to whether decedent's death arose out of and in the course of his employment.

The order appealed from is reversed with directions to the District Court to dispose of the case in conformity with the views herein expressed.

KERNER, Circuit Judge (dissenting).

The Longshoremen's Compensation Act excludes from its benefits only those persons who regularly are engaged in seafaring and navigation and not those whose tasks are independent of navigation. Wheeling, etc., v. McManigal, 4 Cir., 41 F.2d 593; De Wald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245, 246; and South Chicago, etc., Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732. In the South Chicago, etc., Co. case, supra, 309 U.S. page 260, 60 S.Ct. page 549, 84 L.Ed. 732, it was said: "This Act * * * was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen * * * were still regarded as distinct from members of a 'crew'. They were persons serving on vessels, to be sure, but their service was that of laborers * * * and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation."

The question here is what were Lockas' actual duties? His sole duties were to prepare meals for the crew. He performed no duties in connection with the navigation of the towboat; consequently, the District Court was right and the judgment of dismissal should be affirmed.

[1] De Wald v. Baltimore & O. R. Co., 4 Cir., 71 F.2d 810; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Hawn v. American S. S. Co., 2 Cir., 107 F.2d 999; Antus v. Interocean S. S. Co., 6 Cir., 108 F.2d 185; Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F.2d 779.