## SOUTH CHICAGO COAL & DOCK CO. ET AL. *v.* BASSETT, DEPUTY COMMISSIONER.

No. 262.   Argued January 11, 1940.—Decided February 26, 1940.

---

*Mr. Robert J. Fononie,* with whom *Mr. Hayes McKinney* was on the brief, for petitioners.

*Assistant Attorney General Shea,* with whom *Solicitor General Jackson* and *Messrs. Melvin H. Siegel, Paul A. Sweeney,* and *Aaron B. Holman* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

John Schumann, an employee of petitioner, South Chicago Coal & Dock Company, was drowned while serving his employer on a vessel in navigable waters of the United States. His widow was awarded compensation by the deputy commissioner under the Longshoremen's and Harbor Workers' Compensation Act.[1] The deputy commissioner found that decedent was performing services on the vessel as a laborer and fell from the vessel into the water. The employer and its surety brought suit in the District Court to restrain the enforcement of the award, contending that decedent was employed as a member of the crew and hence that compensation was not payable. The District Court granted a trial *de novo* and finding that the decedent was a member of the crew vacated the award.

The Court of Appeals found that the evidence before the District Court was similar to that heard by the deputy commissioner; that the facts were not in dispute; that the District Court in reviewing the finding of the deputy commissioner was precluded from weighing the evidence, being required to examine the record and ascertain whether there was any evidence to support the commissioner's finding. Holding that there was such evidence, the Court of Appeals reversed the decree of the District Court and directed the dismissal of the bill of complaint. 104 F. 2d 522. Because of an alleged conflict with a decision of the Court of Appeals of the Fifth Circuit in the case of *Maryland Casualty Co.* v. *Lawson*, 94 F. 2d 190, we granted certiorari, 308 U. S. 532.

---

[1] 44 Stat. 1424; 33 U. S. C. and U. S. C. Supp. IV, §§ 901, *et seq*

The statute provides specifically in § 3 as to "Coverage," that no compensation shall be payable in respect of the disability or death of a "master or member of a crew of any vessel." [2] And these persons were excluded from the definition of the term employee. § 2 (3).[3]

It appears that the vessel was a lighter of 312 net tons used for fueling steamboats and other marine equipment. It was licensed to operate in the Calumet River and Harbor and in the Indiana River and Harbor. The Court of Appeals thus summarized its operations: "It supplied coal to other vessels on their order, each operation consuming only a couple of hours. It had no sleeping or eating quarters. Its certificates of inspection required that 'Included in the entire *crew* hereinafter specified and designated there must be 1 licensed master and pilot, 1 licensed chief engineer, three seamen, 1 fireman'. If deceased were counted as a member of the crew, the full complement of the ship was present. Otherwise not." The captain testified before the deputy commissioner that he had five men on the boat with him, one

[2] The entire text of § 3 is as follows:

"Sec. 3. *Coverage.*—(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any drydock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

"(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof.

"(b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another." 33 U. S. C. 903.

[3] 33 U. S. C. 902 (3).

engineer, fireman and three "deckhands," the decedent being one of the latter. The Court of Appeals described his chief task as "facilitating the flow of coal from his boat to the vessel being fueled—removing obstructions to the flow with a stick. He performed such additional tasks as throwing the ship's rope in releasing or making the boat fast. He performed no navigation duties. He occasionally did some cleaning of the boat. He did no work while the boat was en route from dock to the vessel to be fueled." The Court of Appeals thought it significant that his only duty relating to navigation was the incidental task of throwing the ship's line; that his primary duty was to free the coal if it stuck in the hopper while being discharged into the fueled vessel while both boats were at rest; that he had no duties while the boat was in motion; that he was paid an hourly wage; that he had no "articles"; that he slept at home and boarded off ship; that he was called very early in the morning each day as he was wanted; that while he had worked only three weeks, and it might have been possible that he would have been retained for years to come, his employment was somewhat akin to temporary employment.

In *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U. S. 128, we had occasion to consider the purpose and scope of the Longshoremen's and Harbor Workers' Compensation Act. Its general scheme was to provide compensation to employees engaged in maritime employment, except as stated, for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law. We had held that one engaged as a stevedore in loading a ship lying in port in navigable waters was performing a maritime service and that the rights and liabilities of the parties were matters within the admiralty jurisdiction. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52. But

the Court had also held that in the case of a longshoreman who was injured on the land, although engaged in unloading a vessel, the local law governed and hence the workmen's compensation law of the State applied. *State Industrial Commission* v. *Nordenholt Corporation,* 259 U. S. 263. The distinction had thus been maintained between injuries on land and those suffered by persons engaged in maritime employment on a vessel in navigable waters. As to the latter, no doubt was entertained of the power of Congress to modify the admiralty law and to provide for the payment by employers of compensation.[4] And in thus providing, Congress had constitutional authority to define the classes of such employees who should receive compensation and to exclude those described in § 3. *Nogueira* v. *New York, N. H. & H. R. Co., supra.*

The legislative history of the exception now before us throws light upon the intention of Congress. For those employees who are entitled to compensation, the remedy under the Act is exclusive. § 5.[5] This made inapplicable to such employees the provision of § 33 of the Merchants Marine Act (called the Jones Act) which carried to "seamen" at their election the benefit of the provisions of the Federal Employers' Liability Act.[6] The bill, which became the Longshoremen's and Harbor Workers' Compensation Act, was at one stage amended so as to include a master and members of a crew of a vessel owned by a

---

[4] See *Waring* v. *Clarke,* 5 How. 441, 457, 458; *The Lottawanna,* 21 Wall. 558, 577; *Butler* v. *Boston Steamship Co.,* 130 U. S. 527, 556, 557; *In re Garnett,* 141 U. S. 1, 14; *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 60, 62; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 215; *Washington* v. *Dawson & Co.,* 264 U. S. 219, 227, 228; *Panama Railroad Co.* v. *Johnson,* 264 U. S. 375, 386, 388; *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U. S. 128, 138.

[5] 33 U. S. C. 905.

[6] 41 Stat. 1007.

citizen of the United States.[7] They preferred however to remain outside the compensation provisions and thus to retain the advantages of their election under the Jones Act, and the bill was changed accordingly so as to exempt "seamen." Then, in its final passage, the words "a master or member of a crew" were substituted for "seamen."[8] We think that this substitution has an important significance here. For we had held that longshoremen engaged on a vessel at a dock in navigable waters, in the work of loading or unloading, were "seamen." *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50; *Northern Coal Co.* v. *Strand,* 278 U. S. 142. And, also, that such seamen if injured on a vessel in navigable waters, unlike one injured on land, could not have the benefit of a state workmen's compensation act. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. We think it is clear that Congress in finally adopting the phrase "a master or member of a crew" in making its exception, intended to leave entitled to compensation all those various sorts of longshoremen and harbor workers who were performing labor on a vessel [9] and to whom state compensation statutes were inapplicable. The question is whether the decedent in this instance fell within that class.

So far as the decision that this employee, who was at work on this vessel in navigable waters when he sustained his injuries, was or was not "a member of a crew" turns on questions of fact, the authority to determine such questions has been confided by Congress to the deputy com-

---

[7] House Rep. No. 1767, 69th Cong., 2d sess., pp. 1, 2, 20.

[8] Cong. Rec., 69th Cong., 2d sess., vol. 68, pt. 5, pp. 5402, 5403, 5908; *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U. S. 128, 136.

[9] Except where they are engaged "to load or unload or repair any small vessel under eighteen tons net." § 3 (a) (1), 33 U. S. C. 903 (a) (1).

missioner.[10] Hence the Court of Appeals correctly ruled that his finding, if there was evidence to support it, was conclusive and that it was the duty of the District Court to ascertain whether it was so supported and, if so, to give it effect without attempting a retrial. We have so held with respect to the conclusiveness of the finding of the deputy commissioner that an injury to an employee arose "out of and in the course of the employment," *Voehl* v. *Indemnity Insurance Co.*, 288 U. S. 162, 166; as to the finding of the dependency of a claimant for compensation, *L'Hote* v. *Crowell*, 286 U. S. 528, *The Admiral Peoples*, 295 U. S. 649, 653, 654; and as to the finding that the employee had committed suicide and hence that compensation was not payable, *Del Vecchio* v. *Bowers*, 296 U. S. 280, 287. In the *Del Vecchio* case the question was with respect to the application of the exception made by paragraph (b) of § 3 with respect to "Coverage," and we see no reason for a different view as to the application of paragraph (a) (1) of the same section.

Petitioners urge that the question whether the decedent was a member of a "crew" was a question of law. That is, that upon the undisputed facts the decedent must be held as a matter of law to have been a member of a "crew" as distinguished from a longshoreman or laborer at work upon the vessel. We are unable so to conclude.

The word "crew" does not have an absolutely unvarying legal significance. As Mr. Justice Story said in *United States* v. *Winn*, 3 Sumn. 209,[11] the general sense of the word crew is "equivalent to ship's company" which would embrace all the officers as well as the common seamen. But it was observed that the laws upon

[10] 33 U. S. C. 919 (a), 921.
[11] 28 Fed. Cas. 733, Case No. 16,740.

maritime subjects sometimes used the word crew in that general sense and "sometimes in other senses, more limited and restrained." "It is sometimes used to comprehend all persons composing the ship's company, including the master; sometimes to comprehend the officers and common seamen, excluding the master; and sometimes to comprehend the common seamen only, excluding the master and officers." It was therefore deemed necessary to consider the context of the particular use of the term and the object to be accomplished by the enactment under consideration. In *The Bound Brook*, 146 F. 160, 164, it was said that "When the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board." Judge Hough in *The Buena Ventura*, 243 F. 797, 799, thought that statement was a fair summary, and in his view one who served the ship "in her navigation" was a member of the "crew." *Id.*, p. 800. See, also, *Seneca Gravel Co. v. McManigal*, 65 F. 2d 779. Recently, in considering the application of the Jones Act to "any seaman," we adverted to the "range of variation" in the use of the word "crew," and it was again emphasized that what concerned us in that case, which had relation to the status of a "master," was "not the scope of the class of seamen at other times and in other contexts." We said that our concern there was "to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained." *Warner v. Goltra*, 293 U. S. 155, 158.

That is our concern here in construing this particular statute—the Longshoremen's and Harbor Workers' Compensation Act—with appropriate regard to its distinctive aim. We find little aid in considering the use of the term

"crew" in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen (*International Stevedoring Co. v. Haverty, supra*), were still regarded as distinct from members of a "crew." They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation. See *De Wald v. Baltimore & Ohio R. Co.,* 71 F. 2d 810; *Diomede v. Lowe,* 87 F. 2d 296; *Moore Dry Dock Co. v. Pillsbury,* 100 F. 2d 245.

Regarding the word "crew" in this statute as referring to the latter class, we think there was evidence to support the finding of the deputy commissioner. The fact that the certificate of inspection called for three "deckhands" and that the captain included the decedent to make up that complement is not controlling. The question concerns his actual duties. These duties, as the Court of Appeals said, did not pertain to navigation, aside from the incidental task of throwing the ship's rope or making the boat fast, a service of the sort which could readily be performed or aided by a harbor worker. What the court considered as supporting the finding of the deputy commissioner was that the primary duty of the decedent was to facilitate the flow of coal to the vessel being fueled, that he had no duties while the boat was in motion, that he slept at home and boarded off ship and was called each day as he was wanted and was paid an hourly wage. Workers of that sort on harbor craft may appropriately be regarded as "in the position of longshoremen or o ner casual workers on the water." *Scheffler v. Moran Tot ing Co.,* 68 F. 2d 11, 12. Even if it could be said that the evidence permitted conflicting inferences, we think  hat

there was enough to sustain the deputy commissioner's ruling.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration and decision of this case.