**LONG ISLAND R. CO. v. LOWE, Deputy Commissioner, United States Employees' Compensation Commission, et al.**

No. 3287.

District Court, E. D. New York.

July 27, 1943.

Louis J. Carruthers, of New York City, for plaintiff.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., for defendant.

Barry, Wainwright, Thacher & Symmers, of New York City, for intervenors-defendants.

INCH, District Judge.

This is a proceeding brought pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921 (b), to set aside, as not in accordance with the law, a compensation award, known as a death benefit, pursuant to an order made by the Deputy Commissioner, dated May 5, 1943, 33 U.S.C.A. § 919(f).

The order directs payment by the plaintiff Railroad Company, a self-insured employer, to the intervenors-defendants on the claims arising out of the death of one Gallagher, employed by plaintiff.

The plaintiff Railroad Company owned and operated a tug, Cutchogue, in the harbor of New York.

At the time of the accident, Gallagher was the first mate of the tug which was preparing to dock a carfloat and had gone to the bow of the float to handle the lines and signal the captain of the tug, when he went overboard and was drowned. Thereafter the father, mother, and brother of the deceased filed claims with the United States Employees' Compensation Commission demanding funeral expenses and death benefits under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. The mother of the deceased died prior to the first hearing. The intervenors-defendants are the father and brother.

The matter came on for a hearing before the Deputy Commissioner on February 3, 1943, and the plaintiff Railroad Company resisted the claims on the sole ground that the Commissioner did not have jurisdiction owing to the fact that Gallagher, at the time of his death, was a member of the crew of the tug.

Thereafter the Deputy Commissioner made an award and signed and entered an order allowing the aforesaid claims of the father and brother of the deceased and directing the payment of compensation to them.

The testimony taken before the Deputy Commissioner has been stipulated and agreed on and pursuant thereto has been submitted to the court and is comparatively brief, shows no contradictions, and is properly confined to this question of jurisdiction, to wit, whether the deceased, at the time of his death, "was a member of the crew of the tug Cutchogue"? The Commissioner after the close of the hearings made findings of fact and these findings need special attention because on them rests the award and the subsequent order.

■ At the outset it needs no citation of authority to say that this court does not and cannot weigh the evidence before the Deputy Commissioner. The findings of the Deputy Commissioner, provided there is some evidence to support them may not be disturbed. Also the question is not presented of whether the tug, at the time in question, was engaged in navigation, on navigable water, and had a "crew". This latter has sometimes caused considerable trouble. See Hawn v. American Steamship Company, 2 Cir., 107 F.2d 999.

■ Also the mere finding that Gallagher was a member of the crew does not, as a matter of law, determine the issue here presented, for such membership is a question of fact as to the nature of such membership. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

Finally the multitude of cases which have been or could be cited relating to laborers, longshoremen, barge captains, caretakers, and similar workers are not material in this case for we not only have a tug engaged in "navigation" but a "crew" of a tug so engaged, of which Gallagher was a member. The sole issue is Was Gallagher such a member of this crew of the tug at the time of his death as to be excluded by the Act? If he was, the plaintiff Railroad Company is right in its contention that his death was not covered by the Act in question and as a seaman, rights arising from his death, are to be enforced under the Jones Act, if at all. If he was not such a member of the crew then the Deputy Commissioner was correct.

The Deputy has found, and there is ample evidence to support his findings, "that on October 1, 1941, (the day Gallagher died) he had been previously assigned to the tug Cutchogue as the mate. That the tug was used to tow and transfer carfloats about the harbor. That the crew of the tug, in addition to the deceased as the mate, consisted of the captain, engineer, oiler, fireman, deckhand and floatman. That the captain was in charge of the navigation and operation of the said vessel and the only one licensed to pilot it. That the mate (Gallagher) handled the decklines when undocking, cleaned the brass and floor of the pilot house, spliced the ropes, and when the floats were being docked he stood on the bow of the float *to signal the captain of the tug in the pilot house in regard to the vessel's movement* and handle the lines of the float. That he could and *did pilot the vessel* when the captain was present". (Italics mine).

However, the Deputy Commissioner concluded, that at the time of his death, deceased was not a member of the crew of any vessel within the definition of Section 2, of the said Act.

Section 2, 33 U.S.C.A. § 902(3) and Section 903(a) (1) are very brief. They read: "(3) The term 'employee' does not include a master or a member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net". Section 903(a) (1): "No compensation shall be payable in respect of the disability or death of—(1) A master or member of a crew of any vessel".

The explanation for the conclusion reached by the long experienced Deputy Commissioner is found in his other findings which are in substance that Gallagher had not worked in the employment in which he was working at the time of his death for substantially the whole of the year immediately preceding same, that he had previously been employed in various

capacities incidental to the transfer of freight in and about the harbor of New York. That during this period he had worked principally aboard the employer's tugs and carfloats, that he had no permanent assignment to any vessel and had been assigned as floatman, bridgeman, deckhand, aboard tugs as mate, that he lived ashore, was not furnished meals aboard vessel, was paid by the day, was not required to have a license of any kind. That none of the vessels upon which he was employed operated outside the limits of New York harbor.

The captain of the tug was a witness before the Deputy Commissioner and testified that Gallagher was a member of the crew of the tug on the day in question and described his duties as mate. That these duties were, among other things, when preparing to dock a float to stand on the bow of the float, handle the lines and give signals to the captain. That he could on request of the captain and did, pilot the tug when the captain was present. That Gallagher, had worked in this way on the tug about a week before his death. That this tug had three crews, each consisting of seven men, a captain, first mate, floatman, engineer, oiler and a fireman. That Gallagher was more or less an extra man because that was an extra crew, but for the week Gallagher was working on the tug and at the time of his death he was first mate.

It would appear therefore that what the Deputy Commissioner had in mind was that while he found Gallagher was a member of the crew of the tug his duties for the most part as such member made him a laborer or harbor worker only and therefore he was not such a member of the crew as was excluded under the Act.

It seems to me however, that this conclusion overlooks Gallagher's expressly and properly found participation, as a part of his duty, in the actual navigation of the tug. That this part of his duty, so performed, seems to me to make the position of the Deputy Commissioner untenable as a matter of law.

The learned Deputy Commissioner apparently has some doubt as to the correctness of his decision finding that Gallagher, although he was a member of the crew, nevertheless, was entitled to compensation, for, at the close of the hearings, among other things, the Deputy Commissioner states: "Of course, there are some things in here, as I said the last time, that are certainly characteristic of seagoing men; certain duties that he had common to the sea or to seamen and to actual members of the crew of all vessels * * * but this case, unfortunately I think, does not conform to the facts or details of any other case that I know of that has reached the courts as regards the duties etc., of the deceased. In other words, it is a little bit different than anything so far as has . been taken up. It has a little in common with most of them. So, as I say, or attempted to say, at the conclusion of the last hearing, it seems to me still largely a question of intent".

After careful examination of the numerous cases submitted or available I agree with the Deputy Commissioner as to the absence of a case clearly applicable to the facts in this case and it is for that reason that I deem a longer opinion than would ordinarily be required may not be considered out of place.

I cannot agree that, the rights of the plaintiff and defendants, in view of the present law, can be decided merely by the intention of either the employee or the employer or both, but, on the contrary, such decision must be based on facts which must be proven showing what the employee actually did, in accordance with his duties, as a member of the crew. Here the Deputy Commissioner has found on ample evidence that Gallagher took part in the actual navigation of the tug as a part of his duties as first mate. As the law is now written and interpreted this is sufficient to place him in the class excluded from the benefits of the Act.

While the decisions of the higher courts have frequently resulted in legislation exacted in accordance therewith, attempted legislation by a court is beyond its powers aside from reasonable interpretation of the law as written by the light of its purpose. In other words the court cannot decree what the law, in its opinion, ought to be, and thereupon declare it so to be.

Without going into the respective merits of law suit and compensation I believe that, in many instances, compensation is better than litigation and I favor a law making more plain the extension of compensation to seamen performing the duties of Gallagher.

However, in my opinion, this can only be accomplished by an amendment to the present law to the effect that the term "employee" does not include a member of a crew of any vessel unless said vessel is a tug or similar vessel employed exclusively in harbor and river navigation and such member is not a licensed seaman employed primarily for the navigation thereof in which case compensation is payable.

As I have said in the absence of some such legislation by the Congress, I think that Gallagher, on the facts found by the Deputy Commissioner and as the present law is interpreted, is excluded from the benefits of the Act.

Accordingly, in view of the conceded facts and the exclusion directed by the Act, the motions of defendants for summary judgment must be denied. The award and order must be vacated and as there is no disputed question of fact judgment should be granted to the plaintiff.