### PIONEER S. S. CO. et al. v. BACKWELL et al.
### No. 438.

District Court, N. D. Indiana, Hammond Division.

Sept. 25, 1944.

McAleer, Dorsey & Travis, of Hammond, Ind., for plaintiff.

James E. Keating, Asst. U. S. Atty., of South Bend, Ind., for defendant.

SWYGERT, District Judge.

The question to be decided is whether there was any evidence before the Deputy Commissioner which justified his finding that Paul Backwell, an employee of the Pioneer Steamship Company, came within the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. In a more specific sense, it is whether the employee, as shown by the undisputed evidence, was at the time of the accident a member of the crew of the ship on which he was working, and was, thereby, excluded from coverage under the Act.

The essential facts are these: The J. S. Ashley was a vessel which carried freight on the Great Lakes and at the time of the accident was discharging a cargo of stone by means of its self-unloading equipment. Backwell was hired by the master of this boat as a deckhand. When he applied for the job he had a seaman's continuous discharge book which had been issued to him by the Bureau of Marine Inspection and Navigation, indicating he had the rating of an ordinary seaman. The Articles of Agreement expressly stipulated that he was to serve and to perform the duties assigned to him as a member of the crew. They also provided that, "The said members of the crew agree to take in and discharge cargo * * *." In addition to the $148.50 monthly salary, Backwell got his room and board on the vessel and was paid 75¢ per hour for all time he worked over eight hours and for the time he spent inside the cargo hold helping to unload. As a deckhand he testified that, he "had to help open and close the hatches, change cables in port and help keep the decks clean, stow away tarpaulins and help tie up the ship by going ashore and passing the cables to the dock and also to go down into the cargo hold and help get the stone from the sides of the holds into the belt so she will be unloaded." While he was working in the hold during the ship's unloading operation and while aiding in such operation, he fell from a ladder and was injured. The proceedings before and the award of the Deputy Commissioner followed.

The contention made for Deputy Commissioner is that Backwell was injured, not at a time when he was serving as a member of a crew, but while he was helping unload the boat, which work is particularly the employment of a longshoreman and for which he was paid the additional sum of 75¢ per hour. Thus, it is argued on the commissioner's behalf that the employee at the time of his injury had become, at least temporarily, a longshoreman under the provisions of the Act. I cannot accept this view.

The Supreme Court in South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 549, 84 L.Ed. 732, said, "This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen * * *, were still regarded as distinct from members of a 'crew.' They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation." If anything is certain, it is the fact that Backwell was "primarily on board to aid in the navigation" of his boat.

As to the distinction between a longshoreman and a member of a crew, the Circuit Court of Appeals of this circuit said in A. L. Mechling Barge Line et al. v. Bassett et al., 119 F.2d 995, 998, "A reading of the cases makes it rather plain, that while numerous facts have been taken into consideration in distinguishing between a longshoreman and a member of the crew, the fundamental distinction, generally recognized, has been whether the employee was permanently attached to a ship engaged in navigation." In this case it is equally certain that Backwell was "permanently attached" to the ship.

It is true that when injured he was doing what might ordinarily have been the work of a longshoreman. However, the helping to load and unload a boat may also be part of the duties of a member of a crew. In this connection the Circuit Court of Appeals of the Fifth Circuit said in Maryland Casualty Co. v. Lawson, 94 F.2d 190, 192, "Longshoremen who load and unload a vessel under temporary local employment do not become members of the crew, nor do mechanics who similarly come aboard her to repair or clean or paint her; nor do those permanently employed upon

*her cease to be members of the crew because they are put at the same sort of work."* (Emphasis supplied.)

The further fact that Backwell was paid extra for the time he spent helping to unload the vessel is not determinative of whether he lost his status as a member of the crew. If this were so, it could be argued with equal force that he remained a member of the crew because he was being paid for the same identical period at the rate of $148.50 per month as a deckhand.

What is determinative is the fact that he was "naturally and primarily on board to aid in her navigation," South Chicago Coal & Dock Co. v. Bassett, supra, and the fact that he had "that permanent attachment to the vessel which commonly characterizes a crew," Norton v. Warner Co., 321 U.S. 565, 573, 64 S.Ct. 747, 751. These are the basic facts. Their effect is not altered by the *added* circumstances which existed at the time of the accident, namely, that Backwell was doing work which is ordinarily but not exclusively the work of a shore worker and that he was receiving additional pay for such services.

For these reasons, the motion to dismiss is overruled.