572

MARINE OPERATORS et al. v.
BARNHOUSE et al.
No. 44 C 404.

District Court, N. D. Illinois, E. D.
Oct. 20, 1944.

James J. McKenna, of Chicago, Ill., for Roy A. Barnhouse.

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., for the Government.

BARNES, District Judge.

This cause is before the court on the motion of Leonard C. Brown, Deputy Commissioner United States Employees Compensation Commission, to dismiss the complaint.

The complaint was filed to review, set aside, and suspend, as not in accordance with the law and the evidence, an order, made by said Deputy Commissioner by virtue of authority conferred upon him by the Defense Bases Compensation Act, 55 Stat. L. p. 622, 42 U.S.C.A. § 1651 et seq., for the payment of compensation to Roy A. Barnhouse. It appears from the complaint that the Deputy Commissioner's findings and order were, in part as follows:

"That Roy A. Barnhouse * * * was in the employ of the Marine Operators * * * from February 19th to June 5th, 1943, at Waterways, Alberta, Canada; * * * that on or about the 15th of May, 1943, the claimant sustained injuries arising out of and in the course of the employment when he jumped from a truck of the employer after being carried to the mess hall for dinner, and bruised the metatarsal and strained the transverse arch of both feet, causing the falling of said arches; * * * that, as a result of said injuries the employee was wholly disabled beginning with the sixth day of June, 1943, continuing indefinitely, * * *.

"That the employer, Marine Operators, and the insurance carrier, United States Fidelity and Guaranty Company, shall pay to the claimant herein, Roy A. Barnhouse, compensation in the amount of $675. and further compensation at the rate of $25 per week beginning with the 12th day of December, 1943, until the termination of said disability or the further order of the Deputy Commissioner."

It appears from the brief of plaintiffs (p. 2), in opposition to the motion to dismiss, that the only contention of plaintiffs, as a basis for setting aside the Deputy Commissioner's award, is that: "There is no basis in the record upon which the honorable commissioner could reasonably find that there was any causal connection between the incident of jumping off of the rear of the truck and the subsequent condition of ill-being complained of."

This statement is followed by certain quotations from the transcript of the evidence presented before the Deputy Commissioner, and a discussion of the evidence in support of plaintiffs' contention that there is no foundation for the finding of a causal connection between the jumping from the truck and the condition of claimant.

The record, made before the Deputy Commissioner, shows that at the hearing held at Jefferson City, Missouri, on December 1, 1943, three witnesses testified: The claimant, his brother Robert, and his foreman, Harry Whitting. Claimant was not represented by counsel and he and his witnesses were examined by the Deputy Commissioner. The employer and insurance carrier (plaintiffs here) were represented

by counsel, who cross-examined claimant and his witnesses.

Claimant's testimony, briefly, was: He is 27 and resides at Chamois, Missouri; about May 12th or 14th, 1943, while working at Alberta, Canada, as a caulker on barges, his feet got sore and swollen so he could not wear shoes, and his ankles were weak, "I haven't the slightest idea what caused them to do that"; that he hurt his feet one day at noon when he was required to jump off a truck onto the ground; it could have been from jumping off the truck; his feet stung and hurt so that he could hardly walk on them, hurt on ball of foot, but when he got warmed up his feet felt better; that he saw the doctor about a week later; that the doctor's assistant examined him and said it looked like broken arches but the doctor said it wasn't; that the manager let him stay off his feet while they were sore; that the only accident he can think of was that of jumping off the truck, or jumping from the scaffolds on the barges; that he is 27 and has been caulking since he was 15; that he never had any trouble with his feet before he went to Canada, and never went to a doctor; that he passed the railroad examination and worked for Missouri Pacific before he went to Canada; has not been able to do anything since he came back from Canada; feet and legs hurt up to hips. He went back to work after lunch the day he jumped off the truck; it was four or five days or a week later, when walking around camp, that he felt this weakness in his ankles.

Whitting's testimony, briefly, was: He was claimant's foreman; claimant started limping about noon one day, his feet began to swell, said his feet were about killing him, and witness told him to keep off his feet and sent him to the open shed; claimant told witness that he didn't know why feet were hurting, except that he had hurt them jumping off the truck one day; witness did not know about claimant jumping off the truck; they had been bringing up the matter of men jumping off trucks every day or two at the Safety First meetings; they load men on the trucks like cattle, sometimes 65 or so on a truck; one man got his neck broke jumping off the truck; after claimant left, there was a rule established against jumping off the trucks; two or three other men sprained their ankles on the frozen ground jumping out of a truck; witness called to see claimant at the hospital; claimant went to doctor two or three times to have his feet taped and he sat in the open shed but finally they swelled so he could not get back and forth to quarters; witness had worked on jobs with claimant before and had not known of claimant having trouble with feet before that time; truck bed is about 4½ feet high; could not say for sure that claimant's foot trouble is result of jumping out of a truck but two or three men sprained their ankles on that frozen ground doing that.

Robert Barnhouse's testimony, briefly, was: He and claimant had been at Alberta six or seven weeks before claimant went to the doctor; claimant said he had jumped out of a truck, and that is all witness knows could be the cause of claimant's trouble.

The record also shows a medical report on claimant dated February 4, 1944, signed by W. V. Ergenbright, Captain Medical Corps, U. S. Engineer's Office, Alberta, Canada, reading in part:

"No. 3. On 26 May 1943, Mr. Barnhouse was recommended for a medical discharge by Major S. F. Lubben, M.C., at Waterways; diagnosis; fallen transverse arches, bilaterally, and a history of bitter complaints against his feet for the preceding ten days. On 5 June 1943, Mr. Barnhouse presented himself at the U. S. E. D. Dispensary at Edmonton, with copies of the recommendation for medical discharge from Waterways. He was admitted to the U. S. E. D. Dispensary, and was discharged on 12 June 1943. Diagnosis was depressed metatarsal arches, bilaterally, which were symptomatic. On 17 June 1943, a medical discharge was granted by Captain Weiner.

"No. 4. In reviewing Mr. Barnhouse's record, there is no statement that he suffered any traumatic injury to his feet."

At the hearing, the plaintiffs requested permission to have a physical examination made of claimant, and the request was granted by the Deputy Commissioner. The record shows the reports of these physicians, Drs. Peden and Sauer. Dr. Peden's conclusion was: "There is no evidence of bone or joint disease or injury of any nature." Dr. Sauer's conclusion was: "It is my opinion that the cause of the progressive shortening of this man's extensor tendons and the deformity of his plantar arches, is wholly unrelated to his alleged accident (jumping from a truck) and not occupational in origin."

In the recent case of Norton v. Warner Co., 321 U.S. 565, page 568, 64 S.Ct. 747, 749,

**574**

88 L.Ed. 931, the court said: "Sec. 19(a) of the Act [33 U.S.C.A. § 919(a)] gives the Deputy Commissioner 'full power and authority to hear and determine all questions in respect of' claims for compensation. And Sec. 21(b) [33 U.S.C.A. § 921(b)] gives the federal district courts power to suspend or set aside, in whole or in part, compensation orders if 'not in accordance with law'. In considering those provisions of the Act in the Bassett case, [South Chicago Coal & Dock Co. v. Bassett], we held that the District Court was not warranted in setting aside such an order because the court would weigh or appraise the evidence differently. The duty of the District Court, we said, was to give the award effect, 'if there was evidence to support it.' 309 U.S. [251], at page 258 [60 S.Ct. 544, 84 L.Ed. 732]. And we stated that the findings of the Deputy Commissioner were conclusive even though the evidence permitted conflicting inferences. Id., 309 U.S. page 260 [60 S.Ct. 544, 84 L.Ed. 732]. * * * thus it is that the judicial review conferred by Section 21(b) does not give authority to the courts to set aside awards because they are deemed to be against the weight of the evidence. More is required. The error must be one of law, such as a misconstruction of the act."

It is established by the foregoing and like authority that this court is not authorized to set aside the award here merely because it may be of the opinion that the finding of the Deputy Commissioner is against the weight of the evidence presented to him, but that the only duty of the court is to determine whether there was evidence to support the award.

Had the claimant produced an expert who testified that, in his opinion, the claimant's jumping from the truck might or could have resulted in the injuries of which he suffers, there would be no question but that the findings of the Deputy Commissioner would be supported by the evidence. The court is of the opinion, however, that even in the absence of such evidence as this, the evidence which is in record, together with the reasonable inferences to be drawn therefrom, supports the findings of the Deputy Commissioner, and that the motion to dismiss the complaint should be granted.

Counsel for the defendants may, at the opening of the court on Monday, October 30, 1944, present drafts of papers giving effect to the views hereinabove expressed.