HARTFORD ACCIDENT & INDEMNITY
CO. et al. v. SCHWARTZ et al.

Civ. A. No. 3819.

United States District Court
E. D. New York.

Jan. 29, 1946.

Jeremiah F. Connor, of New York City, for plaintiffs.

Aronson, Klein & Aronson, New York City, for defendant Maud Goss (Aaron E. Klein, of New York City, of counsel).

ABRUZZO, District Judge.

This is an action to set aside an award made by the Deputy Commissioner of the United States Employees' Compensation Commission which award granted death benefits to a widow and minor child of a deceased fisherman who met his death during the course of his employment.

The case is submitted to me based upon all of the proceedings had before the Deputy Commissioner which include a transcript of the testimony taken. The proceedings before the Commission were brought for the recovery of death benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903(a) (1), which provides as follows:

"Sec. 903. *Coverage.* (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or * * *."

### Facts

Benjamin L. Bishop, a plaintiff in this action, was the owner of a fishing vessel Amanda Bishop, and was engaged in commercial fishing in the coastal waters of the United States. The deceased, Linus Goss, was employed as one of the fishing crew. This fishing vessel was about 80 feet long and 20 feet wide, with a gross tonnage of 52 and a net tonnage of about 15. It was manned by a fishing crew of about 16 men consisting of Benjamin L. Bishop, a captain, an engineer, a first mate, a striker-boatman, a cook, and an ordinary fishing crew which included the deceased.

On June 10, 1942, between 12:30 and 2:45 P.M., while the vessel was cruising around to locate proper fishing grounds in the coastal waters of the United States, the deceased sustained personal injuries when he fell overboard from the vessel, resulting in his death by drowning.

These fishing operations were carried on from Monday to Friday of each week, and it was customary for the men to go home for the week end.

The deceased was apparently a casual worker not permanently attached to the vessel. He was engaged generally in fishing, his rate of employment depending upon the amount of fish caught, to wit, seven and eight cents per 1,000 fish caught, from which was deducted his pro rata cost of the

food that he ate. The men of the ordinary fishing crew were required to know how to catch fish and to handle and mend nets in the course of the fishing operation, but they were not required to have any knowledge of navigation, had no duties to perform in connection with navigation, and were not required to sign articles as seamen.

The Hartford Accident and Indemnity Company is the insurer of the owner of the vessel, Benjamin L. Bishop, and is a plaintiff in this action. The plaintiffs contend that on the basis of these facts, the deceased, at the time of his death, was a member of the crew within the exceptions to coverage of Section 903(a) (1) of the Longshoremen's and Harbor Workers' Compensation Act.

Conversely, the contention of the defendant, Maud Goss, is that the deceased was not a member of the crew within the contemplation of the said exceptions to coverage.

The decision in this case must necessarily rest upon interpretation of this section as to whether or not the deceased was a member of the crew. That must necessarily depend upon what the framers of this section intended it to cover and what it was designed to accomplish. A review of some of the cases heretofore decided might, therefore, be helpful in reaching a proper conclusion.

## Cases

There is an unanimity of authority for the proposition that the award of the Deputy Commissioner should not be disturbed unless it be shown that such an award was arrived at without a basis in fact, and that the court on review will not weigh the evidence to determine whether it preponderates in favor of the Deputy Commissioner's findings. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S. Ct. 544, 84 L.Ed. 732; Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430.

The Court, in South Chicago Co. v. Bassett, supra, decided in 1940, presented its interpretation of the Longshoremen's and Harbor Workers' Compensation Act.

In that opinion is found a long treatise on exactly what Congress intended to accomplish and who was covered and, likewise, who was exempted under the terms of the statute. The bill at one time provided the clause so as to include the master and members of a crew of a vessel owned by a citizen of the United States, but as they preferred to remain outside the compensation provisions and thus retain the advantages of their election under the Jones Act, 46 U.S.C.A. § 688, the bill was changed accordingly so as to exempt seamen. It has been held that longshoremen engaged on a vessel at a dock in navigable waters, in the work of loading or unloading, are seamen. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. It is clear, therefore, that seamen are exempted.

In the Bassett case, Schumann, an employee of the South Chicago Coal & Dock Company, was drowned while serving his employer on a vessel in navigable waters of the United States. His widow was awarded compensation. The Deputy Commissioner found as a basis for this award that the decedent was performing services on the vessel as a laborer. His chief duties were facilitating the flow of coal from his boat to the vessel being fueled, removing obstructions to the flow with a stick, and, in addition, he threw the ship's rope in releasing or making the boat fast. He occasionally did some cleaning of the boat. He performed no navigation duties. He had signed no articles, was paid an hourly wage, and slept at home. A crew of a vessel is referred to as those persons who are naturally and primarily meant to aid her in navigation, without reference to the nature of the arrangement under which they are on board. Persons serving on board vessels, their service that of laborers, of the sort performed by longshoremen and harbor workers, are distinguishable, therefore, from those employees on the vessel who are naturally and primarily on board to aid in her navigation. DeWald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245.

Schumann .was, therefore, regarded as one who .may appropriately be said to be in a position of longshoreman or other casual worker on the water. The Deputy Commissioner's award of compensation was sustained because Schumann was held to be not a member of the crew.

Norton v. Warner Co., supra, is a later case. There, one Nicholas Rusin was employed by the respondent as a boatman on a barge. While using a capstan bar to shift the barge at a pier, this bar pulled out and struck him upon the chest and caused him to fall. The answer to the problem turns on whether Rusin was a master or member of a crew of any vessel. The Deputy Commissioner found that Rusin was a harbor worker and granted him a compensation award. His duties consisted of taking general care of the barge. They included taking care of the lines at docks, tightening or slackening them as necessary; repairing leaks; pumping out the barge; taking lines from tugs; responding to whistles from the tugs; putting out navigational lights and signals; taking orders from the tugboat when being towed; and moving the barge at piers by the capstan. The Court distinguishes the Bassett case, supra, and states as follows, 321 U.S. at pages 571-573, 64 S.Ct. at page 751: "We know of no reason why a person in sole charge of a vessel on a voyage is not as much a 'member of the crew' as he would be if there were two or more aboard. We said in the Bassett case that the term 'crew' embraced those 'who are naturally and primarily on board' the vessel 'to aid in her navigation'. Id., 309 U.S. at page 260, 60 S.Ct. at page 549. But navigation is not limited to 'putting over the helm'. It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can 'hand, reef and steer'. Judge Hough pointed out in The Buena Ventura, 2 Cir., 243 F. 797, 799, that 'every one is entitled to the privilege of a seaman who, like seamen, at all times contribute to and labor about the operation and welfare of the ship when she is upon a voyage.' And see The Minna, D. C., 11 F. 759; Disbrow v. Walsh Bros.,

D.C., 36 F. 607, 608 (bargeman). We think that 'crew' must have at least as broad a meaning under the Act. For it is plain from the amendment exempting a 'master or member of a crew' that ship's company was not brought under the Act. And we are told by the Senate Report, as already noted, that the purpose of the legislation was to provide compensation for those who 'are mainly employed in loading, unloading, refitting, and repairing ships.' S.Rep.No.973, supra.

"Rusin, unlike the employee in the Bassett case, did no work of the latter variety. He performed on the barge functions of the same quality as those performed in the maintenance and operation of many vessels. His were indeed different from the functions of any other 'crew' only as they were made so by the nature of the vessel and its navigational requirements. The contract under which he was employed stated that the compensation was 'based upon all services and time required to safeguard and operate the barge fleet.' The services rendered conformed to that standard and no other. Rusin moreover had that permanent attachment to the vessel which commonly characterizes a crew. See A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995. * * *"

In the Norton case, Rusin was held to be a member of the crew and the Deputy Commissioner's award of compensation was reversed.

The Bassett and Norton cases seem to be the two leading cases.

The Minna, D.C.E.D.Mich., 11 F. 759, held that a libel for services performed as fishermen on board the ship is permissible and creates a lien upon the vessel. See also The Carrier Dove, 1 Cir., 97 F. 111.

Montagna v. Norton, D.C.N.J., 28 F. Supp. 997, Benedetti was employed as a fisherman and sustained injuries while he was employed as a fisherman and utility man in connection with the vessel Nunziata, then afloat on the waters of the Altantic Ocean, about two and a half miles off shore of New Jersey, and while he went from said vessel in a small boat to tighten and fasten certain nets constituting a pound,

and, while pulling upon a net, slipped and fell, striking his hip and back, causing serious and disabling injuries. The Deputy Commissioner made an award of compensation on the theory that he came within the exception of Section 903, not being a member of the crew. The District Court confirmed the finding of the Deputy Commissioner, pointing out that Benedetti in no way took part in the operation of the vessel as he received his wages for riding out to sea on the vessel and only assisted in tending the nets for the purpose of transferring fish from the nets to the vessel, riding back to the wharf on, and unloading fish from, the vessel, after which he helped to prepare the fish for sale and marketing.

The Deputy Commissioner was justified in making an award of compensation based upon his holding that the deceased was not a member of the crew of the vessel and, therefore, came within the rule laid down in the Bassett case. The Norton case in no way overruled the Bassett case.

A judgment should, therefore, be entered in favor of the defendants, and findings of fact and conclusions of law may be submitted in accordance with this decision.