**O'LEARY v. COASTAL NAV. CO. et al.**

No. 12915.

United States Court of Appeals Ninth Circuit.

Dec. 26, 1951.

718

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty., Seattle, Wash. (Wm. S. Tyson, Ward E. Boote, Asst. Sol., Herbert P. Miller, Atty., U. S. Department of Labor, Washington, D. C., of counsel), for appellant.

Bogle, Bogle & Gates, Edward S. Franklin, Seattle, Wash., for appellee.

Bassett & Geisness, Seattle, Wash., amicus curiae.

Before DENMAN, Chief Judge, ORR, Circuit Judge, and DRIVER, District Judge.

DENMAN, Chief Judge.

This is an appeal from a judgment of the district court enjoining the enforcement of an award under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., hereafter the Act, granted by the Deputy Commissioner of the Fourteenth Compensation District, to Genevieve Long for the death of her husband, Frank Long, on the diesel engined vessel, the Coastal Glacier.

Long was licensed as a chief engineer. His death arose from injuries from a fall from the stairs leading down to the engine room on the Coastal Glacier.

The district court held that the Deputy Commissioner's finding that Long as an employee covered by the Act was not supported by substantial evidence. The Act defines a compensable employee in 33 U.S.C.A. § 902(3) as: "The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

The district court in enjoining the Commissioner held that Long was a member of a crew at the time he received his injuries and hence not a compensable employee. That court, in reviewing the action of the Deputy Commissioner, is required to sustain his decision if there be evidence from which the Commissioner may infer that Long's functions at the time he received his injuries were primarily those of an ordinary harbor worker as distinguished from those of a member of the ship's crew. In determining the validity of the Commissioner's inference, the Supreme Court has stated in Cardillo v. Liberty Mutual Co., 330 U.S. 469, 477, 67 S.Ct. 801, 806, 91 L.Ed. 1028, that:

"In determining whether a particular injury arose out of and in the course of employment, the Deputy Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the foregoing statutory provisions. If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable. * * *

"It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. * * * It is likewise immaterial that the facts permit the drawing of diverse inferences. The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court."

As was said in South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 259, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732, the question in determining whether the employee is compensable under the Act is what is "the primary duty of the decedent" and "the question concerns his actual duties." Cf. Merritt-Chapman & Scott Corp. v. Willard, 2 Cir., 189 F.2d 791, 792.

The evidence is not disputed. The Coastal Navigation Co. at all relevant times owned two diesel driven vessels, the Coastal Glacier and the Coastal Forest, each of a length of 115 feet, constructed for the carriage of passengers and freight. The Coastal Glacier had been operated in Alaska waters with a crew of nine or ten men, of whom Long was a member as chief engineer. The Coastal Forest had not been operated in Alaska. Union demands for a larger crew made the operation of the two vessels unprofitable and they were taken to Ballinger Dock, Washington, to engage in the same trade in Puget Sound and adjacent waters. The Coastal Glacier, with Long as chief engineer, made several voyages there, the last being over six months prior to the time of Long's injury. During that six months' period she remained moored in Ballinger Dock.

Long was the only member of the former crew employed on the Coastal Glacier after her arrival in Washington. His duties were to keep the auxiliary electric equipment and the diesel engines in repair, turning the latter over once a month, and to act as her caretaker. She was to be ready for voyage charter in 24 hours. He lived aboard the Coastal Glacier and was furnished his subsistence by his employer. He operated the engines on the several voyages she made after her arrival in Washington. In addition he made a monthly turnover of the engines of the Coastal Forest, moored nearby, and was also her caretaker. He was paid a monthly wage of but $250 for his services to both vessels.

Applying the rule of the Bassett case that it is the primary duty of the employee which determines compensability under the Act, it appears, as to the caretaking duties of both vessels performed by Long for 29 of the 30 days of a month, that after Long's death one Haas was employed to perform and did perform all of them. Haas was not a seaman but a painter who had never been to sea. The turning over of the engines was performed by an engineer who came aboard once a month.

It cannot be said that the Commissioner's finding "that at the time of his injury the deceased was performing service for the employer in his capacity as a caretaker of the vessel 'Coastal Glacier' and not as a member of the crew of said vessel" is not supported by a permissible inference from such evidence "of the primary duty of the decedent."

The judgment of the district court is reversed.