**YOUNG PATROL SERVICE, Plaintiff,**

v.

**SS ELDORADO, her engines, etc., and Clearship Navigation Company, a corporation, Defendants.**

**No. C–69–261.**

United States District Court, N. D. California.

March 30, 1970.

Rosenthal & Leff, Lawrence R. Mullen, San Francisco, Cal., for plaintiff.

Lillick, McHose, Wheat, Adams & Charles, Anthony Cary, San Francisco, Cal., for Chase Manhattan Bank.

ORDER

OLIVER J. CARTER, District Judge.

On January 30, 1970, this Court ordered that The Chase Manhattan Bank's mortgage on the vessel SS ELDORADO was entitled to the status of a first preferred mortgage on the vessel under the provisions of the Ship Mortgage Act of 1920, 46 U.S.C. § 911 *et seq.* On that date, the Court ordered foreclosure of The Chase Manhattan Bank's mortgage and distribution to The Chase Manhattan Bank (hereinafter referred to as CHASE) of proceeds from the sale of the vessel, since the amount of CHASE's lien on the ship exceeded the amount of the net proceeds from the sale. However, the Court withheld from final distribution, the amount of $12,316.53, pending determination of various alleged preferred maritime liens asserted against the SS ELDORADO. The question now presented to the Court is whether or not Young Patrol Service, plaintiff herein, is entitled to $3,802.83 of the proceeds from the sale of the vessel because of a lien it has which is allegedly in preference over CHASE's lien.

Some time prior to August 8, 1969, the SS ELDORADO was berthed and docked at Howard Terminals, Oakland, California. At that time, plaintiff was engaged by the owner of the SS ELDORADO to furnish guards to guard the ship. The owner of the ship agreed to pay plaintiff the sum of $5,918.85, of which $3,802.83 was agreed upon as the amount to be paid by plaintiff to the three guards which were furnished to guard the ship. The three guards provided services on the ship from August 8, 1969 to October 8, 1969 and were paid by plaintiff the sum of $3,802.83. Duties of the guards included checking on the mooring of the vessel, its draft, fire stations, the quantity of water visible in the shaft alley and elsewhere in the bilges, and generally protecting the ship in other respects.

The issue before the Court is determined by an interpretation of Section 30, subsection M of the Ship Mortgage

Act of 1920, 46 U.S.C. § 953 which provides:

"(a) When used hereinafter in this chapter, the term 'preferred maritime lien' means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage.

"(b) Upon the sale of any mortgage vessel by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, all preexisting claims in the vessel, including any possessory common-law lien of which a lienor is deprived under the provisions of section 952 of this title, shall be held terminated and shall thereafter attach, in like amount and in accordance with their respective priorities, to the proceeds of the sale; except that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxes, by the court."

Plaintiff's lien is entitled to a preferred status if and only if the advances it made to the guards were "wages of the crew of the vessel" within the meaning of 46 U.S.C. § 953. The Court concludes that the payment in dispute did not constitute "wages of the crew of the vessel" and therefore is not entitled to a preferred status over CHASE's lien.

Before 1920, ship mortgages were not entitled to maritime lien status and were thus inferior to the many maritime liens a ship could incur. See Bogart v. The John Jay, 58 U.S. (17 How.) 399, 15 L.

Ed. 95 (1854). For this reason, a ship mortgage was "practically worthless" as security to financing companies. In 1920, Congress in order to promote and maintain the merchant marine, enacted the Ship Mortgage Act to make private investment and credit in the shipping industry more attractive by providing for preferred ship mortgages. See Gilmore & Black, The Law of Admiralty § 9–48 (1957).

As provided for in 46 U.S.C. § 953, preferred ship mortgage liens are subordinate to liens for claims for wages of the crew of the vessel. "The word 'crew' does not have an absolutely unvarying legal significance," and its meaning must be ascertained "for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained." South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 258–259, 60 S.Ct. 544, 548–549, 84 L.Ed. 732 (1940). Normally, "the word crew connotes the company of persons, including the officers, belonging to one vessel and engaged in her navigation." 6 Benedict on Admiralty 247 (6th ed. 1940).

For purposes of determining priority between the liens in dispute here, the Court concludes that the guards who were paid by plaintiff were not members of the crew of the SS ELDORADO. The guards were employees of the plaintiff Young Patrol Service and were under its direction and control. Services were provided to the SS ELDORADO by the guards under orders from the plaintiff. For this reason, even if plaintiff describes its payment as "an advance subject to reimbursement by the owner of the ship" the fact still remains that the guards plaintiff furnished to the ship were not members of the crew of that ship.

Accordingly, it is hereby ordered that plaintiff's motion for an order declaring its lien a preferred maritime lien be, and the same is hereby denied.