Joseph **BURKS**

v.

**AMERICAN RIVER TRANSPORTATION COMPANY.**

**Civ. A. No. 77–420–A.**

United States District Court, M. D. Louisiana.

March 7, 1980.

---

**604**

Floyd J. Falcon, Jr., Dodd, Barker, Avant, Wall & Thomas, Baton Rouge, La., for plaintiff, Joseph Burks.

Eugene R. Groves, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for intervenors, Rogers Terminal and Shipping Corp. and Northwestern Nat. Cas. Co.

John O. Charrier, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant, American River Transp. Co.

Thomas K. Kirkpatrick, Kirkpatrick, Keyser & Kirkpatrick, Baton Rouge, La., for third party defendant, Rogers Terminal and Shipping Corp.

E. GORDON WEST, District Judge:

Joseph Burks works as a longshoreman for Rogers Terminal and Shipping Corporation, a stevedoring company, operating at the Port of Baton Rouge, Louisiana. He works primarily aboard the K–1, a special kind of floating barge outfitted with a deck crane and other deck machinery which enables it to unload cargo from river barges directly into seagoing vessels. The K–1 is owned by Burks' employer, Rogers Terminal and Shipping Corporation (Rogers). On October 31, 1976, while standing on the deck of the barge ART–402, which had just been unloaded by the K–1, he stepped onto a hatch cover which gave way beneath him, precipitating him into the hold of the barge, where he was injured. The ART–402 is owned by defendant, American River Transportation Company (ARTCO).

Burks sued ARTCO, claiming negligence and breach of the warranty of seaworthiness of the ART–402. This Court, after hearing the evidence, dismissed the negligence claims, and the case has been submitted on the issue of Burks' entitlement to sue the owner of the ART–402 on the warranty of seaworthiness.

Traditionally, the warranty of seaworthiness has always been considered to be owed by a ship's owner to the seamen employed aboard his ship. It has been often repeated that the question whether or not a particular individual is a seaman covered by the warranty is, within reasonable bounds, a matter for the finder of fact, *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (CA 5).

■ It has been held that there is a reasonable basis for a finding that an individual is a seaman if the following test is met: ". . . there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and . . . the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." *Offshore Co. v. Robison*, 266 F.2d 769, 779 (CA 5 1959).

But the above test was described as "[M]ore frequently an analytical starting point than a self-executing formula" in *Brown v. I.T.T. Rayonier, Inc.*, 497 F.2d 234 (CA 5 1974). The scope of the warranty of seaworthiness was expanded to include, not only seamen as described above (commonly called Jones Act Seamen), but also any person aboard ship to render it service either "with his [the owner's] consent or by his arrangement" in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Most of the so-called *Sieracki* Seamen were longshoremen already covered by the Longshoreman and Harbor Workers' Compensation Act (LHWCA). Normally, of course, a worker's compensation scheme, which pays benefits for work-related injuries without regard to fault, is offered as a substitute for other remedies which a worker might have at law. The *Sieracki* case was greatly criticized for permitting longshoreworkers to double-dip, as it were, enjoying the benefits of the compensation system while retaining the right to recover damages from shipowners who were strictly liable for breach of the warranty of seaworthiness. See Gilmore & Black, The Law of Admiralty, pages 408–12 and *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979). Accordingly, the LHWCA was amended in 1972 to provide that when a longshoreman sued the owner of a ship on which he was injured such suit "shall not be based upon the warranty of seaworthiness," 33 U.S.C.A. § 905(b). Jones Act Seamen are excluded from coverage under the LHWCA,[1] therefore their right to claim the warranty of seaworthiness is unaffected by the 1972 legislation.

Clearly, if Burks, a member of the longshoreman's union for twenty-one years, who was engaged in the typical longshoreman's work of unloading a vessel at the time of his injury, and who has accepted LHWCA money paid him on account of that injury, is a longshoreman, then he is not entitled, since 1972, to the warranty of seaworthiness, and this action must be dismissed. Only if he can show himself to be a Jones Act Seaman rather than a longshoreman can he recover. For reasons set out below we find him to be a longshoreman vis-a-vis the defendant and dismiss his suit.

■ We pretermit consideration of the question whether Burks is a seaman as to the K–1 and its owner, Rogers. Whatever his status vis-a-vis Rogers, as to ARTCO and the ART–402, he was a longshoreman. Burks had none except the most transient attachment to the ART–402. He did not perform a substantial part of his work aboard her. The fact that he may have satisfied the test of seaman's status as to the K–1 is irrelevant here, since Burks is not suing Rogers.

The scheme devised by Congress for apportioning liability for maritime injuries envisions that longshoremen shall have their recovery under the LHWCA and that seamen shall have theirs under the Jones Act. The fact that this particular stevedoring operation, conducted by Rogers, elects to put its longshoremen aboard vessels like the K–1 rather than having them operate from a dock or pier as most longshoremen do, may possibly affect their own (Rogers') potential liability, but it should not be permitted to increase the potential liability of the vessel owner who simply contracts with a stevedoring firm to load or discharge cargo to or from his vessel, and who does not dictate the manner in which the job is to be performed. When it amended the LHWCA

---

1. § 902(3) excludes "a master or member of a crew of any vessel" from coverage. It is now well-settled law that a Jones Act Seaman and an LHWCA "master or member of the crew of any vessel" are functional equivalents, see *Noble Drilling Corp. v. Smith*, 412 F.2d 952 (CA 5—1969).

Though we accept this as law, we pause to note its apparent inconsistency with the intent of Congress. The initial draft of the LHWCA excluded "seamen" from coverage. This was changed in the enacted bill to include instead any "master or member of the crew of any vessel." It is hard to see why Congress should take such trouble in choosing between the alternative phrases if they mean the same thing. See *South Chicago Coal and Dock Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544 at 547–8, 84 L.Ed. 732 (1940).

**606**

in 1972, Congress sent a symbolic message to vessel owners that thenceforward they would be liable for injury to persons employed to load or unload cargo onto or from their vessels, only to the extent such injuries were caused by the negligence of those owners or their servants. That should be true no matter what method the stevedoring firm elects to use to get its job done.

The case of *Salgado v. M. J. Rudolph Corp.*, 514 F.2d 750 (CA 2—1975) is not authority to the contrary. There, a laborer was injured aboard the crane barge R–6 while unloading a freighter drawn up alongside. The Court said in dictum, "Had Salgado been injured [aboard] the freighter, he could have sued the ship owner." Assuming the Court meant that Salgado could have sued the shipowner under the warranty of seaworthiness, this is no longer true. The facts in *Salgado* arose prior to the 1972 LHWCA amendments.

In our finding that Burks lacks seaman's status, we lay greater emphasis on the type of work he does for the vessel owner than on the conditions under which he does that work. We believe we may properly do so in light of the large measure of discretion confided to the fact finder in determinations of seaman's status under *Senko v. La Crosse*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957). Further, this approach is consistent with early jurisprudence before the courts began to systematically expand the bounds defining seaman's status in order to accommodate injured plaintiffs who otherwise would have been badly undercompensated. See the case of *South Chicago Coal and Dock Company v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940) in which the plaintiff, who apparently had a sufficient connection with a vessel to qualify as a seaman, was held to be covered by the LHWCA where his work, though all performed afloat on navigable waters, consisted essentially of loading coal aboard other vessels.

The 1972 LHWCA amendments which greatly increase the level of benefits payable under the Act have removed the reason for the former equitable inclination of the courts to liberally construe the Jones Act at the expense of the LHWCA. The line between the coverage of the two Acts should at least favor the LHWCA to the extent that a man such as Joseph Burks, who regards himself as a longshoreman, works exclusively as a longshoreman, and is so regarded by all who work with him, will be so regarded in law as well, especially insofar as his status, vis-a-vis the owner of the vessel being loaded or discharged is concerned. For these reasons, this action will be dismissed and judgment will be entered accordingly.